**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Northern Division

| | |
|---|---|
| MARKEL AMERICAN INSURANCE COMPANY a/s/o McDonogh School, Inc. | : : : |
|  | : Case No. 1:22-cv-2035 |
| Plaintiff, | : : |
| v. | : : : |
| TATE ENGINEERING SYSTEMS, INC. 3921 Vero Road Baltimore, MD 21227 | : : **DEMAND FOR JURY TRIAL** : : |
| <u>Serve on Resident Agent</u>: CSC-Lawyers Incorporating Service Company 7 St. Paul Street Suite 820 Baltimore, MD 21202 | : : : : : : : |
| Defendants. | : |

## **COMPLAINT**

Plaintiff Markel American Insurance Company, as subrogee of McDonogh School, Inc., by and through its undersigned counsel, avers against Defendant, Tate Engineering Systems, Inc., as follows:

## **PARTIES**

1. Plaintiff, Markel Insurance Company (hereinafter "Markel"), is a company organized and existing under the laws of the Commonwealth of Virginia and having its principal place of business located at 4521 Highwoods Parkway, Glen Allen, VA 23060 and at all times relevant hereto was in the business of issuing property insurance policies and duly authorized to transact business and issue insurance policies in the State of Maryland.

2. Plaintiff's Insured, The McDonogh School, Inc. (hereinafter "The McDonogh School" or "the School"), is a non-profit corporation operating a college preparatory school organized under the laws of the State of Maryland located at 8600 McDonogh Road, Owings Mills, Maryland.

3. At all times relevant hereto, The McDonogh School was engaged in the business of education.

4. Defendant, Tate Engineering Systems, Inc. (hereinafter "Tate"), is a corporation organized under the laws of the State of Maryland, with a principal place of business located at 3921 Vero Road, Baltimore, Maryland 21227, and at all times relevant hereto was in the mechanical services business.

## JURISDICTION

5. Plaintiff, Markel, is a citizen of the Commonwealth of Virginia. Defendant Tate is a citizen of the State of Maryland. As such, diversity exists between Plaintiff and Defendant.

6. The amount in controversy in this matter exceeds $75,000.00 exclusive of interest and costs.

7. Accordingly, the United States District Court has jurisdiction over this matter based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

## VENUE

8. Pursuant to 28 U.S.C.A. § 1391, venue is proper in the United States District Court for the District of Maryland because it is the judicial district within which a substantial part of the events giving rise to Plaintiff's claim occurred, which is 8600 McDonogh Road, Owings Mills, Maryland.

**FACTUAL BACKGROUND**

9.     Plaintiff's insured, the McDonogh School entered into an agreement with Defendant Tate, on or about March 29, 2018, to perform work on the boiler system at the McDonogh School.

10.    Defendant, Tate performed assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, maintenance, repair, replacement, work and start-up of the boiler system at the Property on multiple occasions including on September 18, 2019, when an explosion occurred at the School.

11.    At all times relevant hereto, Markel issued a policy of insurance under policy no. 8502WS1049717-0 to the McDonogh School. This policy covered the McDonogh School, the real and personal property of the School, provided business interruption coverage, and insured against certain other losses of and for the School.

12.    Thereafter, Tate performed assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, maintenance, repair, replacement, work and start-up of the boiler system at the School on September 18, 2019, when an explosion occurred at the School (hereinafter "the Loss").

13.    The Loss was caused by the negligent and careless acts and/or omissions of Defendant Tate in their assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, maintenance, repair, replacement, work and start-up of the boiler system at the School.

14.    As a direct and proximate result of the Fire Loss, Plaintiff's Insured suffered significant damage to its property and sustained certain other losses in an amount in excess of $75,000.00.

15. In accordance with the terms and conditions of the Policy, Plaintiff was required to and did make payments to its insured or on behalf of its insured in an amount in excess of $75,000.00 for damages sustained as a result of the Loss.

16. By virtue of Plaintiff's payments made to its insured, Plaintiff is now subrogated to the extent of those payments to the rights of recovery that Plaintiff's Insured possessed against the Defendant, Tate.

## **COUNT I - NEGLIGENCE**

17. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs of this Complaint as if fully set forth herein at length.

18. Defendant owed a duty to Plaintiff's Insured to properly assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up the boiler system at the School in a careful, professional and non-negligent manner.

19. Defendant Tate owed a duty to Plaintiff's Insured to properly assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up the boiler system at the School in a manner which would not create a dangerous condition, cause an explosion and/or increase the risk of harm to the boiler system, School and/or other property.

20. Defendant Tate owed a duty to Plaintiff's Insured to hire competent employees, agents, representatives, contractors and/or subcontractors to assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up the boiler system at the School.

21. Defendant Tate owed a duty to Plaintiff's Insured to assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up

the boiler system at the School in a manner that safeguarded the general public and Plaintiff's Insured from the risk of and explosion and the Loss as a result of the sudden and catastrophic failure of the boiler system.

22. Defendant Tate owed a duty to Plaintiff's Insured to exercise reasonable and/or due care under the circumstances then and there existing.

23. Defendant, Tate carelessly and negligently breached all the above-described duties by:

    a. Failing to properly and safely assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up the boiler system that Defendant knew or reasonably should have known would subject Plaintiff's Insured and the School to an unreasonable risk of harm;

    b. Failing to assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up the boiler system that was safe for all reasonably foreseeable uses;

    c. Assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, repairing, replacing, working and starting-up the boiler system that defendant Tate knew or reasonably should have known subjected Plaintiff's Insured and the School to an explosion and the Loss;

    d. Failing to provide adequate warnings and instructions regarding the risk of explosion, the Loss and possible resultant damage to the boiler system;

    e. Failing to comply with applicable local, state and federal statutes, codes, regulations and generally recognized safety practices and standards;

    f. Failing to comply with industry standards and guidelines;

g. Failing to test and/or inspect the boiler system to determine whether it could be used by Plaintiff's Insured without posing a risk of injury to life and/or to property;

h. Failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during the operation of the boiler system;

i. Failing to warn Plaintiff's Insured about the defective condition of the boiler system;

j. Negligently and carelessly assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, repairing, replacing, working and starting-up the boiler system without adequate instructions, warnings, and/or safeguards;

k. Assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, repairing, replacing, working and starting-up the boiler system which defendant knew, or reasonably should have known, was defective and would cause injury to Plaintiff's Insured;

l. Mis-wiring the controls on the burner and draft controls which caused this explosion.

m. Mis-wiring the controls resulting in the dampers on the boiler system closing when the system called for the dampers to open and the dampers opened when the system called for the dampers to close resulting in the system filling with gas causing the explosion and Loss; and

n. Otherwise failing to use due care, as to be disclosed during the course of discovery.

24. The explosion and the Loss and resultant damages occurred as a direct and proximate result of defendant Tate's careless and negligent conduct, acts and/or omissions as averred above.

25. As a result of the explosion and the Loss and resultant damage, Plaintiff's Insured suffered damage to its property and sustained certain other losses in an amount in excess of $75,000.00.

26. As a result of defendant, Tate's negligence and the resulting explosion and the Loss, and pursuant to the terms and conditions of the Policy, Markel made payments to or on behalf of its insured in an amount in excess of $75,000.00.

27. By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against Defendant.

WHEREFORE, Plaintiff, Markel, demands judgment in its favor and against Defendant, Tate Engineer Systems, Inc., together with interest and the costs of this action.

## COUNT II- BREACH OF CONTRACT

28. Plaintiff, Markel, incorporates by reference, the preceding paragraphs as though fully set forth herein at length.

29. Defendant Tate expressly and/or impliedly agreed to assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up the boiler system design in a good and workmanlike manner, free of defects and in accordance with all applicable county, city and state codes, laws, and regulations, and general standards and practices of the trade and industry.

30. Based upon defendant Tate's representations, Plaintiff's Insured, the McDonogh School, entered into an agreement with Defendant Tate, on or about March 29, 2018, to perform work on the boiler system at the McDonogh School.

31. At all times relevant hereto, The McDonogh School fulfilled its obligations under the agreement with Defendant.

32. Defendant was obligated by the above promises and agreements to perform the required work in a manner so as to not cause harm to the property of Plaintiff's Insured.

33. Defendant breached its contract with The McDonogh School by way of, *inter alia*:

   a. Creating a dangerous explosive hazardous condition;

   b. Failing to exercise reasonable precautions for the prevention of an explosion;

   c. Failing to properly and safely assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up the boiler system that Defendant knew or reasonably should have known would subject Plaintiff's Insured and the School to an unreasonable risk of harm;

   d. Failing to assemble, design, fabricate, manufacture, warrant, service, inspect, maintain, test, maintain, repair, replace, work and start-up the boiler system that was safe for all reasonably foreseeable uses;

   e. Assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, repairing, replacing, working and starting-up the boiler system that defendant Tate knew or reasonably should have known subjected Plaintiff's Insured and the School to an explosion and the Loss;

8

f. Failing to provide adequate warnings and instructions regarding the risk of explosion, the Loss and possible resultant damage to the boiler system;

g. Failing to comply with applicable local, state and federal statutes, codes, regulations and generally recognized safety practices and standards;

h. Failing to comply with industry standards and guidelines;

i. Failing to test and/or inspect the boiler system to determine whether it could be used by Plaintiff's Insured without posing a risk of injury to life and/or to property;

j. Failing to incorporate an alternative and safer design and/or other guards or devices to minimize the risk of failure and/or injury during the operation of the boiler system;

k. Failing to warn Plaintiff's Insured about the defective condition of the boiler system;

l. Negligently and carelessly assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, repairing, replacing, working and starting-up the boiler system without adequate instructions, warnings, and/or safeguards;

m. Assembling, designing, fabricating, manufacturing, warranting, servicing, inspecting, maintaining, testing, repairing, replacing, working and starting-up the boiler system which defendant knew, or reasonably should have known, was defective and would cause injury to Plaintiff's Insured;

n. Mis-wiring the controls on the burner and draft controls which caused this explosion.

      o.    Mis-wiring the controls resulting in the dampers on the boiler system closing when the system called for the dampers to open and the dampers opened when the system called for the dampers to close resulting in the system filling with gas causing the explosion and Loss; and

      p.    Otherwise failing to use due care, as to be disclosed during the discovery process.

34.    The Explosion and the Loss and resultant damages occurred as a direct and proximate result of defendant Tate's breach of contract and express warranties.

35.    As a direct and proximate result of the Fire Loss, Plaintiff's Insured, sustained damages to its property and certain other losses in an amount in excess of $75,000.00.

36.    As a result of the explosion and the Loss, Plaintiff has made payments to or on behalf of its insured in an amount in excess of $75,000.00, in accordance with the terms and conditions of the Policy.

37.    By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against all Defendant.

WHEREFORE, Plaintiff, Markel, demands judgment in its favor and against Defendant, Tate Engineer Systems, Inc., together with interest and the costs of this action.

## COUNT III – STRICT LIABILITY

38.    Plaintiff, Markel, incorporates by reference, the preceding paragraphs as though fully set forth herein at length.

39. The negligent electrical work on the gas fired boiler system performed by Defendant Tate was an ultra-hazardous and/or abnormally dangerous activity and constituted an extraordinary risk of harm and resulted an in explosion.

40. Consequently, Defendant is strictly liable to Plaintiff for its damages, even in the absence of any negligence or breach of duty by Defendant.

41. If and to the extent that it is determined that the work performed by Tate for does not, in general, give rise to strict liability, the specific facts of this event, namely, the conduct of Defendant by performing electrical work on a gas-fire boiler system in a negligent manner raised the risk of harm to an extraordinary level, thereby resulting in strict liability being imposed on the Defendant for the damage to Plaintiffs' Insureds' property.

WHEREFORE, Plaintiff, Markel, demands judgment in its favor and against Defendant, Tate Engineer Systems, Inc., together with interest and the costs of this action.

### COUNT IV – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY & IMPLIED WARRANTY OF FITNESS FOR PARTIUCLAR PURPOSE

42. Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs as if fully set forth herein at length.

43. Defendant Tate impliedly warranted that the boiler system and its component parts were of merchantable quality, free from defects, constructed of adequate and sufficient material, and properly designed so as to be fit for the purpose for which it was intended.

44. Defendant breached their implied warranties by:

   a. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, and/or selling the defective boiler, burner and its component parts;

    b. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, and/or selling the defective boiler, burner and component parts which was not of merchantable quality;

    c. Manufacturing, designing, fabricating, testing, inspecting, distributing, assembling, and/or selling the boiler, burner and component parts which were not fit for the particular purpose for which it was designed and used; and

    d. Failing to ensure that the boiler system, burner and component parts were free from any and all defects before said product left Defendant's possession, custody and/or control.

40. The above-described breaches by defendant Tate constituted the cause in fact and the direct and proximate cause of the Fire Loss and the resultant damages.

41. Defendant Tate received timely notice of the above-described breaches which were the direct and proximate cause of the Fire Loss and resultant damages.

42. As a direct and proximate result of the Loss, Plaintiff's Insured, sustained damages to his real and business personal property and certain other losses in an amount in excess of $75,000.00.

43. As a result of the Loss, Plaintiff has made payments to or on behalf of its insured in an amount in excess of $75,000.00, in accordance with the terms and conditions of the Policy.

44. By virtue of the payments made to its insured and pursuant to the terms and conditions of the Policy, Plaintiff, Markel, is legally, equitably, and contractually subrogated to the rights of its insured with regard to all claims against Defendant.

WHEREFORE, Plaintiff, Markel, demands judgment in its favor and against Defendant, Tate Engineer Systems, Inc., together with interest and the costs of this action.

        Respectfully submitted,

        STRAVITZ LAW FIRM, PC

By:   /s/Eric N. Stravitz
       Eric N. Stravitz (Bar No. 23610)
       4601 Presidents Drive
       Suite 120
       Lanham, MD 20706
       O:  (240) 467-5741
       F:  (240) 467-5743
       E:  eric@stravitzlawfirm.com

       OF COUNSEL:*
       Michael F. Wallace, Esquire
       Law Offices of Robert A. Stutman, P.C.
       20 East Taunton Road, Suite 403
       Berlin, New Jersey 08009
       Phone: 856-767-6800 ext. 14
       Fax: 856-767-6810
       Email: WallaceM@StutmanLaw.com
       * Motion for Admission *Pro Hac Vice*
         to be filed

       *Counsel for Plaintiff Markel American Insurance Company*

## JURY DEMAND

Plaintiff respectfully requests a trial by jury in the above-captioned matter.

       /s/Eric N. Stravitz
       Eric N. Stravitz (Bar No. 23610)

13